Middleton, J.
The question before this court may be stated thus: “Is a charter city amenable to the provisions of Section 17-3 et seq., General Code (Section 4115.03 et seq., Revised Code), commonly referred to as the Prevailing Wage Law, with respect to compensation of its civil service employees?”
Section 3, Article XVIII of the Ohio Constitution, bestows upon municipalities the powers of home rule. It provides:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
Section 7 of Article XVIII authorizes the adoption of a charter by any city or village.
The city of Youngstown had adopted a charter long before the present controversy arose. Section 9 of that charter provides that the “council shall by ordinance determine the number of officers and employees in each department of the city government.” Section 10 provides that the “council shall fix by ordinance *217 the salary or compensation of all officers and employees of the city government. ’ ’
Section 10 of Article XV of the Ohio Constitution recognizes civil service but only provides: “Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.” The Constitution contains no other limitation applicable to charter cities with respect to civil service.
By section 52 of the Youngstown charter all provisions of the General Code of Ohio relating to municipal civil service are adopted and made part of the charter.
Under authority of the charter provisions, the council determined the number of employees and their classification, fixed their salaries and appropriated funds to pay them, and the municipal civil service commission approved the payrolls. The plaintiff was in the classified service.
The authority so exercised by council is in harmony with the provisions of Section 4214, General Code, which is found in Title XII, entitled “Municipal Corporations. ’ ’ The corresponding section in the Revised Code is 731.08 and is found in Title VII, entitled “Municipal Corporations.” That section of the General Code reads:
“Except as otherwise provided in this title, council, by ordinance or resolution, shall determine the number of officers, clerks and employees in each department of the city government, and shall fix by ordinance or resolution their respective salaries and compensation, and the amount of bond to be given for each officer, clerk or employee in each department of the government, if any be required. Such bond shall be *218 made by such officer, clerk or employee, with surety subject to the approval of the mayor.”
W e find nothing in such title which can be construed as an exception to Section 4214.
The statutes on which plaintiff relies are contained in Sections 17-1 to 17-6, General Code, under the heading, “Wages and Hours on Public Work,” and are found in Title I, which is entitled “Preliminary.” The corresponding sections in the Revised Code are 4115.01 et seq., found in Chapter 4115, entitled “Wages and Hours on Public Work,” which is a part of Title 41, entitled “Labor and Industry.”
Section 17-3, General Code (Section 4115.03, Revised Code), comprises definitions and provides:
“The term ‘public authority,’ as used in this act, shall mean any officer, board, or commission of the state of Ohio, or any political subdivision thereof, authorized by law to enter into a contract for the construction of a public improvement or to construct the same by the direct employment of labor. The term ‘construction,’ as used in this act, shall mean any construction, reconstruction, improvement, enlargement, alteration or repair of any public improvement fairly estimated to cost more than three hundred dollars. The term ‘public improvement,’ as used in this act, shall include all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works and all other structures or works constructed by the state of Ohio or any political subdivision thereof. The term ‘locality,’ as used in this act, shall mean the county wherein the physical work upon any public improvement is being performed. The term ‘public authority’ shall also mean any institution supported in whole or in part by public funds and this act shall apply to expenditures of such institutions made in whole or in part from public funds.”
*219 Section 17-4, General Code (Section 4115.04, Revised Code), provides in part:
“It shall be the duty of every public authority authorized to contract for or construct with its own forces a public improvement, before advertising for bids or undertaking such construction with its own forces, to have the Department of Industrial Relations ascertain and determine the prevailing rates of wages of mechanics and laborers for the class of work called for by the public improvement, in the locality where the work is to be performed; and such schedule of wages shall be attached to and made part of the specifications for the work, and shall be printed on the bidding blanks where the work is done by contract. But a minimum rate of wages for common laborers, on work coming under the jurisdiction of the state Department of Highways, shall be fixed in each county of the state by said Department of Highways, in accordance with the provisions of section 17-4a of this act.”
Section 17-4a, General Code (Section 4115.05, Revised Code), provides in part:
“The wages to be paid for a legal day’s work, as hereinbefore prescribed in section 17-4 of this act, to laborers, workmen or mechanics upon such public works shall not be less than the wages paid in the same trade or occupation in the locality where such public work is being performed, under collective agreements or understanding, between bona fide organizations of labor and employers, at the date such contract is made. Serving laborers, helpers, assistants and apprentices shall not- be classified as common labor and shall be paid not less than the wage prevailing in the locality for such labor as a result of collective agreements or understanding between bona fide organizations of labor and employers, at the date such contract is made. In the event there is no such agreement or understanding *220 in the immediate locality, then the prevailing rates of wages in the nearest locality in which snch collective agreements or understandings are in effect shall be the prevailing rate of wages, in such locality, for the various occupations covered by this act.”
It is to be conceded that, under Section 3 of Article XVIII of the Constitution, above quoted, municipalities may not enact local police, sanitary or other similar regulations in conflict with general laws. The decisions, cited by the plaintiff in support of his contention that municipalities are required to observe the Prevailing Wage Law, involved factual situations which called into play this limitation of power with respect to legislation affecting local police, sanitary and other similar regulations. We, therefore, do not consider them as controlling authorities in the instant case. In our judgment, the Home-Rule Amendment to the Ohio Constitution empowers municipalities to enact and enforce civil service regulations with respect to employment, unaffected by the Prevailing Wage Law. This power is vested in municipalities not only by the constitutional grant but by Section 4214, General Code, above quoted. To enforce the provisions of the Prevailing Wage Law (comprising Sections 17-1 to 17-6, General Code) would be to ignore the provisions of Section 4214. To sustain the plaintiff’s contention in this case would be to substitute a determination of the rates of pay by negotiation between labor unions and other employers for a determination by the council of the municipality. We do not believe that such was the legislative intent. However, in any event, the home-rule powers of the city would govern.
The appellant urges that the Prevailing Wage Law was enacted by the General Assembly pursuant to Section 34, Article II of the Ohio Constitution, which provides :
“Laws may be passed fixing and regulating the *221 hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power.” (Emphasis supplied.)
It is argued that application of the Prevailing Wage Law as to employees of municipalities can not be prevented through reliance upon the home-rule powers of a charter city, which powers are granted in Article XVIII of the Ohio Constitution. It is the view of this court that the Prevailing Wage Law does not establish “ a minimum wage” in the sense that those words are used in Section 34, Article II of the Constitution. In that connection it is to be noted that the General Assembly has enacted other statutes comprised in Sections 154-45cZ to 154-45Z, General Code, which sections appear under the heading, “Minimum Fair Wage Standards,” and which are commonly known as the Minimum Wage Act. The corresponding sections in the Revised Code are 4111.01 et seq. There is no issue in the instant case with respect to the Minimum Wage Act and no construction of it is required or undertaken herein. It is only pertinent to observe that the subject of minimum wage was covered by the General Assembly by the enactment of statutes entirely separate from those comprising the Prevailing Wage Law.
We, therefore, hold that Section 17-3 et seq., General Code, commonly referred to as the Prevailing Wage Law, did not govern the wages of the plaintiff, and that the provisions of those sections of the statutes are not applicable to the construction of a public improvement by the city of Youngstown with its own civil service employees. The demurrer was properly sustained.

Judgment affirmed.

Weygandt, C. J., Taet, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.